IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIKA WALKER,

            Plaintiff,

    v.

J.H. FINDORFF & SON, INC.,

            Defendant.

OPINION AND ORDER

21-cv-420-slc

---

In this civil action brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, plaintiff Erika Walker alleges that she was harassed, retaliated against, and constructively discharged from her position as a business systems analyst with defendant J.H. Findorff & Son, Inc. (Findorff) because of her race (Hispanic) and national origin (Mexican). Before the court is Findorff's motion to dismiss Walker's Title VII hostile work environment claim and § 1981 constructive discharge claim. Dkt. 5. Walker's remaining two causes of action are not subject to the motion.

For the reasons stated below, I am granting Findorff's motion with respect to Walker's hostile work environment claim and denying it with respect to the § 1981 constructive discharge claim.

A court resolving a motion to dismiss takes all well-pled facts in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Walker alleges the following facts in her complaint:

## ALLEGED FACTS

Plaintiff Erika Walker identifies her race as Hispanic and her national origin as Mexican. on June 18, 2018 She began working as a business systems analyst for defendant J.H. Findorff & Son, Inc., a Wisconsin building contractor,.   Although Findorff hired Walker to test, document, and create training documents for CMIC software, it did not give her the proper training on the software or company policies and procedures.

Walker worked with Karen Gill on software testing, data evaluation, and the creation of analytical reports.   Although Gill was not Walker's manager, Gill took it upon herself to micromanage Walker's work and constantly found fault with Walker's efforts.  Walker reported Gill's behavior to her supervisor, Chief Financial Officer Tim Stadelman, in March 2019, but Stadelman never addressed her concerns formally.

During a meeting on July 12, 2019, Director of Project Management Deana Turner referred to Walker as "Inez," the only other Latina employee in the office.  That same day, Walker sent an email to Stadelman and human resources representatives Renee Boyce and Jennifer LaBerge.  Her email stated in part that:

> This email is extremely hard for me to write today as I am extremely emotional about what happened and I would want for your department to have this in your records. I am extremely afraid that by saying something about it, could result in the elimination of my position, or perhaps a way to categorize me in a negative way and/or get retaliation in return, but still I fee that I must make you aware of it. While I attended a meeting at the main office, I was called someone else's name by someone who I had had meetings in the past. This would not have been a big deal if I was call Melissa, Nancy, Liz, Bridget, Emily, E, etc. but the fact that I was called Inez did affect me. Inez and I look nothing like each-other, we do not work in the same department, and the only thing that we have in common is our race/cultural background/ nationality. Calling me Inez cam across offensive, which can be

2

> part of an unconscious bias, cross-race-effect, casual-racism as
> calling me someone else's name because of their race/culture, but
> no matter what, this affected me. The worse part, is that I didn't
> even receive an apology, and I do not think anyone gave it a
> second thought because they do not come from a minority
> background and do not struggles with issue like this every day.

> Complaint, dkt. 1, at 3-4 (all *sic*).

On July 15, 2019, Walker met with Boyce and Stadelman to discuss Walker's complaint. During this meeting, Boyce asked Walker why she had not corrected Turner when she had called Walker "Inez." Walker explained that in her culture, she was raised not to question or embarrass any authority figures, including her supervisors, in public. Boyce then explained that Walker was in the United States now and that she needed to be more aggressive or fast-thinking in the business world.

Soon thereafter, Findorff cut-off or restricted Walker's access to different software applications without providing any advance notification or warning. This followed the general pattern of Findorff failing to provide Walker adequate training and access to its software and procedures in order for her to perform her job sufficiently. When Walker requested assistance with the company's software or internal policies and procedures[1], she received dismissive or negative comments from Gill.

On August 12, 2019, Turner restricted Walker's use of paid time off to care for her son. Walker had previously used approved medical leave to care for her son and paid time off for her

---

[1] Walker alleges that she made these requests over a period of "seven or more months," but she does not identify at what point during her almost two-year employment she began making these requests or when she stopped making them.

own needs, which she would make up through flextime.  Turner instructed Walker that she would now need to use four-hour blocks to care for her son.

On August 14, 2019, LaBerge and Turner called Walker into a hastily scheduled meeting and informed her that her position was being redesigned.[2]  They advised Walker that she would need to reapply for the new position, which would be posted internally and externally, and there was no guarantee that Walker would get the job.  LaBerge and Turner also stated that Walker could resign and accept a meager severance package if she did not believe that she would be a good fit for the new position.  Walker quit her job on October 1, 2019.

Between January 1, 2018 and October 1, 2019, Findorff employed 249 white employees in a variety of positions but only 10 Latino or Hispanic employees, all but one or two of whom were youth apprentices or co-op employees who worked between four and seven months each.

## ANALYSIS

### I. Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the complaint's legal sufficiency. A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

---

[2] Walker does not allege who made the decision to redesign her position or what the redesign entailed.

4

*Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court of Appeals for the Seventh Circuit has explained that it is generally sufficient that the "complaint contain[] factual allegations identifying (1) who discriminated against [the plaintiff]; (2) the type of discrimination that occurred; and (3) when the discrimination took place." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). *See also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.").

## II.  Title VII Hostile Work Environment Claim

Walker alleges that she was subject to a hostile work environment based on her national origin and race. To state a Title VII hostile work environment claim, Walker must allege that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on the protected characteristic in question (i.e., race or national origin); (3) the harassment was sufficiently severe and pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015); *see also Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 2019 WL 1430281, at *8 (W.D. Wis. Mar. 29, 2019) (citing *Huri*). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an abusive relationship." *Huri*, 804 F.3d at 834 (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)).

Factors relevant to determining whether a work environment was objectively hostile include the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating or merely an offensive utterance, and whether the harassment unreasonably interfered with an employee's work performance. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014); *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (citing *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975-76 (7th Cir. 2004)). "[R]elatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment." *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998); *see also Milsap v. City of Chicago*, 2018 WL 3361889, at *5 (N.D. Ill. July 10, 2018) (collecting cases).

Walker identifies the following as harassment that she endured because of her race and national origin:

- Findorff did not train Walker properly.

- Turner incorrectly referred to Walker as "Inez"—the only other Latina employee in their office—during one meeting.

- Boyce told Walker to be more aggressive or fast-thinking because she was now in the United States.

- Findorff cut off Walker's access to certain software.

- Gill made dismissive and negative comments to Walker and micromanaged her work.

- Turner told Walker that she had to change how she used leave time to care for her son.

- LaBerge and Turner told Walker that her position was being redesigned and that she would have to reapply for it or take a severance package.

6

Findorff contends that this alleged conduct was not so severe or pervasive as to support a plausible hostile work environment claim and that most of it had nothing to do with Walker's race or national origin.  I agree.

Walker alleges that Turner and Boyce each made one comment that vaguely referenced her national origin or race over the course of almost two years.  These isolated comments were not so severe or pervasive to alter the conditions of Walker's employment and create an abusive working environment.  *See Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 2019 WL 1430281, at *8 (W.D. Wis. Mar. 29, 2019) (dismissing hostile work environment claim where co-worker made mental illness and national origin-related comments on only three occasions over course of two years).  Although Walker alleges that she experienced other isolated instances of adverse conduct related to training and recording leave time, her allegations do not make it plausible that her work environment was threatening, humiliating, abusive, or overly racist.  Apart from Turner's and Boyce's vague comments, none of the other alleged conduct seemed to have anything to do with her race or national origin.

Walker argues that her allegations are sufficient because the pleading requirement for employment-discrimination claims is minimal.  However, as Findorff points out, Walker relies on case law relating to disparate treatment claims that do not analyze the pleading standards for a hostile work environment claim under Title VII.  *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 822 (7th Cir. 2014) ("A complaint alleging sex discrimination under Title VII need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.") (internal quotation omitted).

7

"Hostile work environment claims are different from disparate treatment claims because the issue is not whether particular acts constitute employment discrimination or retaliation, but whether the overall environment in which a plaintiff worked was illegally and racially hostile." *Robinson v. Lake Minnehaha Owner's Ass'n*, 2012 WL 6197150, at *5 (N.D. Ind. Dec. 12, 2012); *see also Guster-Hines v. McDonald's USA, LLC*, 2021 WL 2633303, at *8 (N.D. Ill. June 25, 2021) (identifying five factors courts consider in determining whether hostile work environment claims properly pled); *Salgado v. Graham Enter. Inc.*, 2019 WL 3555001, *2-3 (N.D. Ill. Aug. 1, 2019) (allowing discrimination claim to proceed while dismissing hostile work environment claim). Although Walker may have considered the alleged conduct personally offensive, uncomfortable, or unprofessional, she has failed to meet the high threshold for establishing a hostile work environment claim.  Even taking Walker's allegations as true, the alleged conduct in this case was not sufficiently pervasive, frequent, or objectively offensive to state such a claim.  *See Salgado*, 2019 WL 3555001, at *3 (barebones allegations that employer made plaintiff work in unsafe neighborhoods and subjected him to racial slurs did not allow inference that reasonable person would find environment hostile); *Milsap v. City of Chicago*, 2018 WL 3361889, at *5 (N.D. Ill. July 10, 2018) (summarizing cases in which uncomfortable and unprofessional work environments fail to meet "exceedingly high" pleading bar).

## II.  § 1981 Constructive Discharge Claim

Walker contends that Findorff constructively discharged her because of her race, in violation of 42 U.S.C. § 1981, which prohibits racial discrimination against employees when a contractual relationship exists between the employer and employee. *Thompson v. Mem. Hosp. of*

*Carbondale*, 625 F.3d 394, 402-03 (7th Cir. 2010); *Hobbs v. City of Chi.*, 573 F.3d 454, 460 (7th Cir. 2009).  Findorff has moved to dismiss this claim on the ground that Walker's allegations do not state or support that race was the "but for" cause of her end of employment.

In a recent case, the Supreme Court held that to prevail on a § 1981 race discrimination claim, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, __ U.S. ___, 140 S. Ct. 1009, 1019 (2020).  In other words, "[u]nder § 1981, the race- or ethnicity-based discrimination must have been the determinative reason for [the] firing." *Arevalo-Carrasco v. Middleby Corp., Inc.*, 851 F. App'x 628, 630-31 (7th Cir. 2021) (citing *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020); *Comcast*, 140 S. Ct. at 1017) (Noting that "[i]f discrimination were merely one reason for his termination, Arevalo could still prevail under Title VII's "motivating factor" standard.").  The Seventh Circuit recently applied *Comcast*, finding that plaintiff's allegations that defendant knew about his race and was "motivated by discrimination" failed to plead a § 1981 race-discrimination claim because nothing in complaint, which he declined to amend, could permit an inference of but-for causation.  *Mir v. State Farm Mut. Auto. Ins. Co.*, 847 F. App'x 347, 350 (7th Cir. 2021).

Here, Walker alleges that she was treated adversely "because of" her race and national origin and subjected to comments referring to her race or national origin.  As an initial matter, plaintiff's use of the phrase "because of" instead of "but for" does not doom her claim.  The Supreme Court has noted specifically that allegations that conduct was "because of" race was "often associated with but-for causation." *Comcast*, 140 S. Ct. at 1016; *see also James v. City of Evanston*, 2021 WL 4459508, at *9 (N.D. Ill. Sept. 29, 2021) (noting same).

Findorff points out that "[t]o give rise to a plausible inference of racial [] discrimination, the objectionable language must be used contemporaneously with the alleged wrongful conduct . . . or must be causally related to the decision-making process leading up to that conduct." *Naserallah v. Full Circle Terminal, LLC*, 2021 WL 1176046, at *3 (N.D. Ill. Mar. 29, 2021) (citing *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 581 (7th Cir. 2015)).  Findorff argues that Walker's allegation that she quit her job after Findorff told her that her position was being redesigned establishes that an action unrelated to race led to her resignation.  *See id.* (granting motion to dismiss where plaintiff failed to allege causal link between racial epithets and illegal conduct); *Piccioli v. Plumbers Welfare Fund Loc. 130, U.A.*, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020) (granting motion to dismiss because plaintiff pleaded himself out of court by alleging that defendant denied Ketamine treatments from other providers and not just plaintiff's Indian doctor).  However, unlike in *Naserallah* and *Piccioli*, Walker alleges that the same co-workers who made the allegedly racist comments also changed how she used her leave time and communicated to her that her position was being redesigned.[3]  It's a close call, but at this early stage it is at least plausible that race was the but for cause of Findorff's conduct.  Therefore, I am denying Findorff's motion to dismiss Walker's § 1981 claim.

---

[3] Although Boyce, who made the comment about Walker needing to be more aggressive because she was now in the U.S., did not take part in the later conduct directed toward Walker, she worked in the same department as LaBerge, who did.  In addition, both Boyce and LaBerge received Walker's email complaint about Turner.

**ORDER**

IT IS ORDERED that defendant J.H. Findorff & Son, Inc.'s motion to dismiss, dkt. 5, is GRANTED with respect to plaintiff Erika Walker's Title VII hostile work environment claim, which will be DISMISSED.  The motion is DENIED in all other respects.

Entered this 19th day of January, 2022.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge